# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

VICTORIA LYNN SISSON,           )
Administrator of the Estate of  )
JASON PATRICK SISSON, Deceased, )
                                )
          Plaintiff,            )
                                )
v.                              )     Civil Action No. 3:19-CV-602–HEH
                                )
PIEDMONT REGIONAL JAIL          )
AUTHORITY, *et al.*,            )
                                )
          Defendants.           )

## MEMORANDUM OPINION
### (Denying Defendant Baker's Motion to Dismiss)

This matter is before the Court on Defendant Amy Baker's Motion to Dismiss (the

"Motion") filed on November 7, 2019, pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) (ECF No. 23). Plaintiff Victoria Lynn Sisson ("Plaintiff"), in her

capacity as Administrator of the Estate of Jason Patrick Sisson ("Sisson"), filed this

Complaint on August 19, 2019, against ten defendants, including Defendant Baker, for

violations of federal and state law (ECF No. 1).[1] Only Defendant Baker filed the pending

Motion, and thus the Court limits its analysis in this Opinion to solely the claims alleged

against her. The parties have filed memoranda supporting their respective positions, and

---

[1] The named Defendants are Piedmont Regional Jail Authority ("PRJA"); James H. Davis; Amy
Baker; Nathaniel C. Jones, Jr.; David Hicks; Mediko, Inc; Mediko, P.C.; Abraham Teklu, M.D.;
Elizabeth A. Smith; and Kaskha N. Johnson. Mediko, P.C. was voluntarily dismissed as a party
Defendant by Plaintiff on September 10, 2019 (ECF Nos. 6–7).

the Court heard oral argument on February 14, 2020. For the reasons that follow, the Court will deny the Motion.

## I.    BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court accepts as true Plaintiff's well-pleaded allegations and views the Complaint in the light most favorable to Plaintiff, the non-moving party. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court notes that, throughout the Complaint, Plaintiff incorporates still images—which include date and time stamps—of a video that was retrieved during the course of the investigation and litigation of this matter. Plaintiff also includes copies of reports and records within the allegations of the Complaint.

This action arises out of the circumstances surrounding Sisson's tragic death in August 2017. Prior to his death, Sisson had been an inmate at the Piedmont Regional Jail (the "Jail") since June 8, 2017, following a Virginia state court conviction. (Compl. ¶¶ 28–30.) The Complaint alleges that Defendant Baker, at all relevant times, was an employee and/or agent of the PRJA and a correctional officer at the Jail, who held the rank of Sergeant and served as a supervisor to other officers. (*Id.* ¶¶ 17, 113.) The Complaint further alleges that the Jail, at all relevant times, was owned and operated by the PRJA. (*Id.* ¶ 8.)

On August 12, 2017, Sisson was assaulted by another inmate and suffered a head injury. (*Id.* ¶ 31.) Following the assault, he was initially transported to Centra Southside

2

Community Hospital ("CSCH"), where he was diagnosed with a basilar skull fracture with intracranial injury, and then was transferred to the Medical College of Virginia ("MCV") for more acute trauma care. (*Id.* ¶ 32.) At MCV, multiple tests indicated fractures of the temporal and occipital bones, as well as blood clots and significant impairments with vascular structures around the sites of the fractures. (*Id.* ¶ 33.)

On August 18, 2017, Sisson was discharged from MCV and sent back to the Jail with specific medical orders, including an order that he be under close observation for 48 hours and receive medical care if there were any problems. (*Id.* ¶ 34.) The Complaint alleges that, upon his return to the Jail, "[a]n employee, agent, and/or servant of the PRJA ordered that . . . he was to be housed in a single cell located in the booking area and maintained on a fifteen (15) minute watch until approved by medical to return to general population." (*Id.* ¶ 37 (emphasis omitted).) After he returned from MCV, Sisson was housed in cell J-4, a cell in the booking area, and remained there until the date of his death. (*Id.* at 38.)

In the early morning of August 19, 2017, a complete copy of all of Sisson's MCV medical records was allegedly downloaded into the Jail's medical record system. (*Id.* ¶ 41.) Plaintiff asserts that by that point, "with the MCV records at their disposal, all Defendants had actual, specific knowledge of Sisson's case, condition, and medical needs. . . . [and] all Defendants knew or should have known of the gravity of Sisson's condition." (*Id.* ¶ 42.) However, Sisson was allegedly not coded as a "medical observation" inmate until August 20, 2017. (*Id.* ¶ 48.)

On August 21, 2017, between at least 12:03 AM and 6:53 AM, the 15-minute ordered checks allegedly never happened. (*Id.* ¶ 51.) However, Defendant Jones allegedly falsified the booking housing sheet to reflect that he performed the ordered checks. (*Id.*) Defendant Baker allegedly signed off on this falsified record. (*Id.*) In the Complaint, Plaintiff includes a copy of the record, which indicates that Sisson was housed in the booking area, and was housed there for medical observation. (*Id.*)

During the early morning of August 21, 2017, the Complaint alleges that Sisson was falling, bleeding, struggling to maintain his balance, and that his jumper fell to his ankles. (*Id.* ¶¶ 52–57.) At one point, Defendant Hicks entered Sisson's cell at Defendant Jones's request, who had seen Sisson on the monitor "rolling around." (*Id.* ¶ 57.) Despite noting Sisson's "bizarre" behavior and bloody face and cell, the officer allegedly rendered no medical care but instead called Defendant Johnson, a nurse. (*Id.* ¶ 57–59.) Defendants Hicks and Johnson allegedly cleaned up the blood on his hands and face, provided him with a blanket, attempted to take his vitals, and then left the cell. (*Id.* ¶¶ 60–62.) Sisson was allegedly incoherent and non-communicative during the encounter, and Defendants allegedly left him in this condition without further evaluation and without summoning emergency medical services. (*Id.* ¶¶ 63–65.)

There are several allegations—throughout the Complaint—that Sisson was pounding on the metal shelf and kicking the door in his cell to draw attention to himself, but that no one responded. (*Id.* ¶¶ 66–73.) After Sisson's repeated calls for attention, a correctional officer allegedly entered the cell, failed to provide any assistance, and left

within one minute. (*Id.* ¶¶ 66–69.) Another officer later entered with a breakfast tray, but immediately departed the cell. (*Id.* ¶ 74.)

Sisson allegedly continued banging and pounding on his cell, but there was no response. (*Id.* ¶¶ 75–78.) He also allegedly bled from the nose and mouth, and held up his hand to show the camera. (*Id.* ¶ 78.) After another officer allegedly walked in and immediately left, Sisson briefly passed out. (*Id.*) He then resumed his calls for attention. (*Id.* ¶¶ 79–81.) An officer later entered with an ice pack, at which point Sisson crashed to the floor, but the officer left the cell without summoning any medical attention. (*Id.* ¶ 82.) At one point, he was allegedly writhing on the floor for at least sixteen minutes. (*Id.* ¶ 83.) Furthermore, inmates in the booking area allegedly heard Sisson throughout the night crying, begging for help, and pleading for medical assistance; however, the Jail staff allegedly berated Sisson and yelled at him to remain quiet. (*Id.* ¶ 110.)

Around 6:59 AM, Sisson allegedly began foaming at the mouth, at which point a nurse entered about five minutes later. (*Id.* ¶¶ 90–91.) This was allegedly the first time Sisson saw a health care professional in almost three hours. (*Id.* ¶ 91.) Two nurses and a correctional officer then attempted to dress Sisson, who was allegedly disoriented, incoherent, and unable to control his muscles. (*Id.* ¶ 92.) After several minutes transpired, someone called 911. (*Id.* ¶¶ 91–96.)

At 7:22 AM, Emergency Medical Technicians ("EMTs") with the Prince Edward Volunteer Rescue Squad arrived at Sisson's cell. (*Id.* ¶ 99.) By that point, Sisson was allegedly unresponsive. (*Id.*) The EMTs began their first round of CPR on Sisson at 7:28 AM, immediately upon exiting his cell and departing the booking area, after

determining that Sisson had stopped breathing and was "pulseless." (*Id.* ¶ 100.) After initially being transported to CSCH, Sisson was transferred to MCV via MedFlight. (*Id.* ¶¶ 102–105.) By 6:10 PM on August 21, 2017, Sisson was determined brain dead, and ultimately died of cardiac arrest at 5:48 PM on August 22, 2017. (*Id.* ¶ 106.)

Defendant Baker allegedly later admitted to Virginia State Police officials that she and other officers assumed Sisson may have fallen, given that his jumper was around his ankles. (*Id.* ¶ 112.) On August 23, 2017, Defendant Jones was allegedly fired for falsifying the entries in the booking housing sheet. (*Id.* ¶ 111.) That same day, Defendant Baker was demoted from Sergeant to Officer. (*Id.* ¶ 113.) In his memorandum demoting Defendant Baker, her supervisor wrote:

> Sergeant Baker, on 8-21-2017 at 0727 hours inmate Sisson . . . was transported to Centra Southside Hospital for further evaluation due to him allegedly falling on the floor in his cell. After reviewing the camera system, it was found that no security checks were made properly during the hours of 0003 hours through 0653 hours. After further investigation, it was also determined that you as the supervisor was in the booking areas during some of those times and did not make or instructed anyone to make the security checks. As a supervisor, you have to take ownership of your shift and make sure that the day to day operation of the jail is being followed. The security checks are to be made every 15 minutes in the booking area. By not making proper security checks lead to someone being transported to the hospital. I spoke to you about this situation and you had no explanation of why the security check weren't made. This type of behavior will not be tolerated.

(*Id.* (grammar and spelling in original).)

Plaintiff alleges five causes of action in her Complaint, only two of which name Defendant Baker. Those two pertinent claims are wrongful death under Va. Code § 8.01-50 due to Defendant Baker's negligence, gross negligence, and/or willful and wanton negligence (Count One), and deprivation of civil rights under 42 U.S.C. § 1983 for

deliberate indifference to serious medical need resulting in cruel and unusual punishment in violation of the Eighth Amendment (Count Three). Plaintiff has brought these claims against Defendant Baker in her individual capacity. (*Id.* ¶ 17.) Plaintiff seeks compensatory damages, punitive damages, and attorneys' fees and costs against all Defendants, jointly and severally. (*Id.* at 68.)

## II. STANDARD OF REVIEW

In her Motion, Defendant Baker invokes Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as grounds for dismissing Plaintiff's claims; however, her Memorandum in Support relies solely on Rule 12(b)(6). While Defendant asserts sovereign immunity as to Count One, which does have jurisdictional implications, federal courts in Virginia have applied Rule 12(b)(6) when assessing this defense under similar circumstances. *See, e.g.*, *Thornhill v. Aylor*, No. 3:15-cv-24, 2016 WL 8737358, at *5 (W.D. Va. Feb. 19, 2016); *Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14-cv-003–JAG, 2014 WL 2002227, at *1, 5 (E.D. Va. May 15, 2014). Furthermore, because this Court's ultimate determination of Defendant Baker's sovereign immunity defense turns on whether Plaintiff has pled sufficient facts amounting to more than mere negligence, this Court finds that Rule 12(b)(6) is the appropriate standard to apply.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 556). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc.*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

While a motion to dismiss tests the sufficiency of a complaint, courts may consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Id.* at 166 (alteration in original) (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). This is based on "the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents of that document." *Id.* at 167. However, "before treating the contents of an

attached or incorporated document as true, the district court should consider the nature of

the document and why the plaintiff attached it," and it should consider whether plaintiff

relied on the attachment for its truthfulness. *See id.* at 167–69; *see also Wallace v.

*Baylouny*, No. 1:16-cv-47, 2016 WL 3059996, at *4 (E.D. Va. May 31, 2016). In this

case, and for the reasons that follow, because Plaintiff specifically incorporates the

images and records into the Complaint and relies on them in her allegations and her

Memorandum in Opposition to the Motion, this Court finds that Plaintiff is relying on

these incorporated attachments for their truthfulness.

### III. DISCUSSION

In her Motion, Defendant Baker asserts that Plaintiff has failed to state a claim for

wrongful death by failing to plead sufficient facts of negligence, gross negligence, and/or

willful and wanton negligence. Even if Plaintiff has stated a wrongful death claim

against her, Defendant Baker asserts that she is protected from liability by sovereign and

good faith immunity. Defendant also argues that Plaintiff has failed to state a claim for

deliberate indifference to serious medical need pursuant to § 1983, and even if Plaintiff

has stated such a claim, she is entitled to qualified immunity. Accordingly, Defendant

Baker seeks to dismiss both claims alleged against her.

The Court rejects at the outset Defendant Baker's arguments that Plaintiff fails to

allege any specific facts against her giving rise to personal liability, and that Plaintiff only

asserts claims against her because she was a supervisor at the jail and supervisory liability

would fail under either claim. As detailed below, this Court finds that Plaintiff has stated

sufficient, particularized facts against Defendant Baker for her own alleged misconduct.

## A. Plaintiff states a claim for wrongful death against Defendant Baker.

Plaintiff asserts that Defendant Baker breached her constitutional, statutory, and common law duties to ensure that Sisson's life and health were properly maintained and cared for while he was in the Jail's custody, and that as a result of Defendant Baker's negligence, gross negligence, and/or willful and wanton negligence, Sisson died. Defendant Baker contends that Plaintiff fails to allege any facts showing wrongful conduct on her part that would give rise to any private right of action for any level of negligence against her in favor of Plaintiff (or Sisson), and that any allegations of negligence are conclusory.

As Defendant Baker points out, "Virginia's wrongful death statute does not create a new cause of action, but only a right of action in a personal representative to enforce the decedent's claim for any personal injury that caused death." *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991). "The statute provides that whenever the death of a person is caused by 'the wrongful act, neglect, or default of any person or corporation' that person or corporation shall be liable for damages." *Thornhill*, 2016 WL 8737358, at *12 (quoting Va. Code Ann. § 8.01-50).

"The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999). "'Gross negligence' is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. . . . [It] amounts to the absence of slight, diligence, or the want of even scant

care." *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987); *Dowdy*, 2014 WL 2002227, at *5. The third level of negligence, willful and wanton negligence, is even more than gross negligence. *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997). It "is 'acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.'" *Id.* (quoting *Griffin v. Shively*, 315 S.E.2d 210, 213 (Va. 1984).

In *Dowdy*, Judge Gibney determined that a plaintiff had sufficiently pled facts for more than mere negligence to overcome the sovereign immunity defense against officers at a regional jail. 2014 WL 2002227, at *5. In that case, the court found that the plaintiff's claims against the officer defendants survived the motion to dismiss stage because there were sufficient allegations in the complaint to establish that the officer defendants were aware of the decedent's suicidal intent upon his arrival at the jail. Furthermore, the defendants should have realized the need to protect the decedent from the danger he posed to himself given the very nature of his incarceration order, and the officers gave him access to the sheets the decedent used to hang himself—an act that was allegedly not observed by the personnel aware of his suicidal intent. *Id.* Accordingly, based on these allegations, that court determined that the plaintiff had pled sufficient facts for gross negligence and/or willful and wanton negligence. *Id.*

In this case, Plaintiff alleges that as an officer employed by the jail, and more specifically assigned to the booking area, Defendant Baker owed a duty to provide reasonable care for Sisson's life and health while he was within her custody. *See Talley*,

179 F.3d at 157–58 ("Under Virginia law, the standard of conduct to which a party must conform to avoid being negligent is that of a reasonable man under like circumstances." (internal quotation, citation, and alteration omitted)); *cf. Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) ("The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain. That protection imposes on prison officials an affirmative obligation to take reasonable measures to guarantee the safety of inmates." (internal quotations, citations, and alterations omitted)). Furthermore, Plaintiff alleges that Defendant Baker knew or should have known of Sisson's medical condition, was in the booking area during the events at issue, was aware that 15-minute checks were ordered to be performed, failed to perform the 15-minute checks or order anyone else to do so, signed off on falsified records, and failed to respond to Sisson's pleas for help and assistance. Plaintiff not only sufficiently states a claim for negligence, gross negligence, and willful and wanton negligence, but does so specifically against Defendant Baker for her own alleged negligent behavior.

Accordingly, the Court finds that Plaintiff has stated a plausible claim of wrongful death under Virginia law against Defendant Baker.

## B. The Court need not determine at this stage if Defendant Baker is protected by sovereign immunity.

Defendant Baker asserts that, even if Plaintiff has sufficiently stated a wrongful death claim against her, she is protected by sovereign immunity, and thus that claim must fail. "In Virginia, sovereign immunity protects employees of a local government if: (1) the employing entity has immunity for the function performed by the employees; (2) the

employees meet [a] four-factor test . . . ; and (3) the claim against the employee raises liability based on simple negligence." *Octave v. Wade*, No. 3:16-cv-338–JAG, 2017 WL 465467, at *2 (E.D. Va. Feb. 3, 2017). Defendant Baker claims that regional jail authorities, like the PRJA, are protected by sovereign immunity in Virginia, and that that immunity extends to the PRJA's employees, like herself.

Despite Defendant Baker's contention, courts throughout Virginia are split as to whether regional jail authorities are entitled to the protection of sovereign immunity, and neither the Fourth Circuit nor the Supreme Court of Virginia have addressed this issue. *See Thornhill v. Aylor*, No. 3:15-cv-24, 2017 WL 2304225, at *2 (W.D. Va. May 25, 2017). However, this Court need not decide at this stage in the litigation whether the PRJA is entitled to sovereign immunity, or if it extends to Defendant Baker as an employee of the PRJA, because Plaintiff has stated sufficient facts supporting a claim for more than mere negligence. *See, e.g., Thornhill*, 2016 WL 8737358, at *13 & n.6; *Dowdy*, 2014 WL 2002227, at *4–5. "Regardless of whether they work for cities, counties, towns, or other entities, individual employees have immunity only from simple negligence claims. They do not have immunity from intentional torts, or torts involving gross negligence or willful and wanton negligence." *Dowdy*, 2014 WL 2002227, at *4–5 (holding that because the plaintiff had stated a plausible claim for gross negligence against the officers, the officers' protection of sovereign immunity "disappear[ed]"); *see Tomlin v. McKenzie*, 468 S.E.2d 882, 884 (Va. 1996); *Nat'l R.R. Passenger Corp. v. Catlett Volunteer Fire Co.*, 404 S.E.2d 216, 219 n.2 (Va. 1991).

Because this Court finds that Plaintiff has sufficiently pled facts supporting claims

of gross negligence and/or willful and wanton negligence against Defendant Baker,

Defendant Baker is not entitled to the defense of sovereign immunity at this stage in the

litigation.[2]  Accordingly, the Court will deny Defendant's Motion to Dismiss as to

Plaintiff's wrongful death claim.[3]

## C. Plaintiff states a claim for deliberate indifference against Defendant Baker.

Plaintiff next alleges that Defendant Baker was deliberately indifferent to Sisson's

serious medical need and failed to provide him necessary medical care, thereby creating a

substantial risk of injury and death.  She claims that was cruel and unusual punishment in

violation of the Eighth Amendment under § 1983.  Defendant contends that Plaintiff only

offers conclusory, broad allegations, and fails to offer any facts showing that she was

aware of Sisson's condition or that he needed medical assistance.

A plaintiff must satisfy a two-part test to establish a viable claim of cruel and

unusual punishment, due to inadequate medical attention, under the Eighth Amendment.

*Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).  The first element—the

---

[2] If Plaintiff fails to establish that Defendant Baker was grossly negligent or willfully and wantonly negligent, Defendant Baker is free to raise the defense again, at the appropriate time.

[3] Defendant Baker concludes her Motion by briefly asserting that she is entitled to good faith immunity with respect to Plaintiff's wrongful death claim.  To support this proposition, she cites *DeChene v. Smallwood*, 311 S.E.2d 749, 751 (Va. 1984), and argues that even if she made a mistake, that mistake is not actionable if she acted in good faith and with reasonable belief in the validity of her actions.  However, *DeChene* was about the legality of an arrest, which turned on "whether the arresting officer acted in good faith and with probable cause." 311 S.E.2d at 751 (internal quotations and citation omitted).  Furthermore, even if this Court were to find that this defense was applicable in this context, for the reasons stated in this Opinion, the Court finds that such a defense fails at this stage because Plaintiff has stated sufficient facts to show that Defendant Baker did not act in good faith or with reasonable belief in the validity of her conduct.

objective component—is satisfied by a showing that a detainee had a serious medical need. *Id.*; *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) ("[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (internal quotations, citations, and alterations omitted)). At this stage, Defendant Baker does not contest that Sisson suffered from a serious medical condition. Indeed, this element is undoubtedly satisfied as the facts here allege that Sisson suffered from and was diagnosed with skull fractures and required medical treatment and observation.

The second element—the subjective component—is established "by showing deliberate indifference by prison officials." *Johnson*, 145 F.3d at 167. "Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "[A] prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting Farmer, 511 U.S. at 837); *see Iko*, 535 F.3d at 241. Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *see Bridges v. Keller*, 519 F. App'x 786, 787 (4th Cir. 2013) (unpublished) ("[O]fficials evince deliberate indifference to a serious medical need by completely

failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care.").

The Complaint alleges that Defendant Baker had knowledge of Sisson's condition, was aware that 15-minute checks were ordered, failed to conduct the checks herself or order that they be done, signed off on the falsified log—which indicated that Sisson was housed in the booking area for medical observation, that she was in the booking area during at least some of the relevant times, and admitted that she was aware of Sisson's jumper being around his ankles and thought he may have fallen. Furthermore, the Complaint alleges that Sisson was repeatedly banging on his cell and crying out for medical assistance on August 21, 2017, and that inmates and prison officials heard his pleas, but no response or medical care was rendered. Whether or not Plaintiff will be able to sufficiently prove these facts is not a question to be decided by this Court at this time. Instead, this Court must only determine whether Plaintiff has sufficiently stated a claim against Defendant Baker for deliberate indifference to Sisson's serious medical need in violation of the Eighth Amendment under § 1983. This Court finds that Plaintiff has satisfied this burden under Rule 12(b)(6).

**D. At this stage, Defendant Baker is not entitled to qualified immunity.**

Defendant Baker contends that, even if Plaintiff has pled a plausible claim of deliberate indifference against her in her individual capacity, she is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a government official is protected by qualified immunity, the court "must (1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable official would have understood that the conduct at issue violated the clearly established right." *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (quoting *S.P. v. City of Takoma Park*, 134 F.3d 260, 265 (4th Cir. 1998)). If the allegedly violated right was clearly established at the time of the incident, and a reasonable officer would have known that her conduct violated that right, the officer is not entitled to the protection of qualified immunity. *See Dowdy*, 2014 WL 2002227, at *6–7; *cf. S.P.*, 134 F.3d at 265. As this Court has recognized, "the Fourth Circuit has frequently noted [that] qualified immunity is peculiarly well-suited for resolution at the summary judgment stage with the benefit of a more fulsome record." *Deavers v. Spotsylvania Cty. Sheriff's Dep't*, 3:14CV365–HEH, 2014 WL 2993445, at *4 (E.D. Va. July 2, 2014) (citing *Willingham v. Crook*, 412 F.3d 553, 558–59 (4th Cir. 2005)).

Plaintiff alleges that Defendant Baker violated Sisson's Eighth Amendment right by failing to provide Sisson with adequate medical care in response to an obvious and serious medical need. At the time of Sisson's incarceration, the Supreme Court of the United States had made clear that "post-trial inmates have a right to adequate medical care for serious illness. A correctional officer's 'deliberate indifference to serious medical needs of [convicted] prisoners constitutes the "unnecessary and wanton infliction of pain" . . . proscribed by the Eighth Amendment.'" *Dowdy*, 2014 2002227, at *7

(alterations in original) (quoting *Estelle*, 429 U.S. at 104); *see City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983). "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Finally, viewing the facts in the Complaint in the light most favorable to Plaintiff, and for the reasons already articulated, this Court finds that a reasonable officer would have understood that Sisson had a right to adequate medical care and that Defendant Baker's acts and omissions constituted deliberate indifference to Sisson's serious medical need in violation of the Eighth Amendment.

Therefore, at this juncture, Defendant Baker is not entitled to qualified immunity.[4] Accordingly, the Court finds that Plaintiff has stated a viable claim against Defendant Baker under § 1983, and thus her Motion as to this claim will also be denied.

## IV. CONCLUSION

Accordingly, for the aforementioned reasons, this Court finds that Plaintiff has stated sufficient claims against Defendant Baker for both wrongful death and deliberate indifference. Furthermore, at this stage, Defendant Baker is not entitled to the protection of immunity for either claim. Therefore, Defendant Baker's Motion to Dismiss will be denied.

---

[4] If Plaintiff fails to establish the facts alleged against Defendant Baker, Defendant Baker is free to raise this defense at a later, and more appropriate, time.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/

Henry E. Hudson
Senior United States District Judge

Date: March 19, 2020
Richmond, VA